Jenna F. Karadbil (SBN 213574)
jenna@jfk-lawyer.com
**LAW OFFICE OF JENNA F. KARADBIL, PC**
375 Greenwich Street, Suite 812
New York, NY 10013
Tel: 646-527-7323
Fax: 866-289-5775

RYAN E. HATCH (CA Bar No. 235577)
**HATCH LAW, P.C.**
13323 Washington Blvd, Suite 302
Los Angeles, CA 90066
Telephone: (310) 279-5076
Facsimile: (310) 693-5328
ryan@hatchlaw.com

*Attorneys for Plaintiff* PILATES SPORTS
CENTER INTERNATIONAL INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PILATES SPORTS CENTER INTERNATIONAL INC.,<br>　　Plaintiff,<br>vs.<br><br>BODY BE WELL, LLC; CHELSEA STREIFENEDER and SUZANNE HAZELTON,<br><br>Defendants. | Case No.: 2:24-cv-10657<br>**PLAINTIFF'S COMPLAINT FOR:**<br>1. **BREACH OF CONTRACT AGAINST DEFENDANTS STREIFENEDER AND BODY BE WELL, LLC**<br>2. **BREACH OF CONTRACT AGAINST DEFENDANT HAZELTON**<br>3. **COPYRIGHT INFRINGEMENT**<br>4. **CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>5. **VICARIOUS COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pilates Sports Center International Inc., by and through its undersigned attorneys, hereby files this suit against Defendants Body Be Well, LLC ("BBW"); Chelsea Streifeneder; and Suzanne Hazelton (collectively, "Defendants").

## BACKGROUND

1.    Pilates Sports Center International Inc., and its predecessor-in-interest, Pilates Sports Center, Inc., (collectively, ("PSC")) is internationally known for its certification programs and has offered its popular "Teacher Training" and "Master Teacher Training" certification programs (collectively, the "Programs") for over twenty (20) years. The Programs were created through the combined research and investment of its co-founders, including through their applications of medical knowledge (through one of its founders, Dr. Andromeda Stevens, D.C.), testing, and development based on their knowledge of Pilates and the operation of a successful Pilates studio and training center. The Programs include PSC's proprietary training systems, style, methodology, written materials, certifications, and curricula, which fuse together both classical and progressive Pilates principles in a unique manner, including through the use of PSC's various proprietary, copyrighted, and trade secret methods and materials (the "Materials"). Students around the world seek out the Programs and what they have to offer.

2.    The Materials include PSC nonpublic business and operational information, training materials and manuals, and the written methods taught to trainers, including those comprising PSC's own proprietary and unique language, ordering, formatting and details and descriptions. PSC is also the owner of several registered copyrights for portions of the Materials.

3.    PSC has several qualifications for those that wish to become Master Teachers, including that such persons have: graduated from a reputable Pilates program at least five (5) years prior to applying, been and currently maintain a CPR or first aid certification, a studio that they will be able to conduct the Programs that

meets certain size specifications, and a location of their studio outside of a territory already under a licensing agreement with PSC.

4.    Students who enroll in the Programs learn to become Master Teachers. However, because it is necessary for PSC to disclose nonpublic information relating to its business, the Programs, and the Materials to Master Teachers so that Master Teachers will eventually be able to instruct the Programs to their own clients, all Master Trainers first enter into a confidentiality agreement before they undergo the Master Teacher Program. Master Teachers then undergo rigorous training and must pass a test before receiving their Master Teacher certification from PSC. Once certified, Master Teachers are then able, through the Master Teacher licensing agreement with PSC, to operate their own Pilates teacher training businesses teaching the Programs and using the Materials.

5.    Defendants became certified Master Teachers and entered into licensing agreements with PSC to teach the Programs at BBW's Pilates studios. Pursuant to their licensing agreements, Defendants agreed, among other things, to pay certain fees to PSC for each of the Programs they instructed, to pay reproduction fees for the Materials used with such Programs, not to change the Programs or the Materials in any way, nor make any derivative works of the Programs or the Materials, without PSC's express prior written consent. Defendants further agreed not to use the Materials in connection with any teacher training program other than the Programs. Defendant Hazelton further agreed to not create any competing programs while her licensing agreement was in place.

6.    Upon information and belief, in or around fall of 2023, Defendants began offering a BBW branded teach training program that substantially copies, or, in multiple instances, exactly copies, the Programs and the Materials (the "Copied Program" and the "Copied Materials"). Defendants never sought permission from PSC to create the Copied Program or the Copied Materials, nor did they terminate

their respective licensing agreements before doing so. Defendants also did not pay the licensing and reproduction fees for the Copied Program and the Copied Materials.

7.    Defendants are thus now using unauthorized copies and/or derivative works of the Programs and the Materials for a teacher training business in direct competition with PSC.

8.    Defendants breached their respective licensing agreements and have directly and contributorily infringed PSC's copyrights by creating, reproducing, and disseminating the Copied Materials, by authorizing their clients to reproduce and disseminate the Copied Materials, by offering and teaching the Copied Program, and by certifying and allowing their clients to offer and teach the Copied Program.

9.    Defendants' failure to comply with the terms of their respective licensing agreements is a direct, willful, and reckless infringement of PSC's copyrights. Defendants have further willfully and recklessly induced and contributed to others infringing PSC's copyrights by certifying their own master teachers who then go on to use the Copied Program and the Copied Materials for their own teacher training programs, who then go on to certify their own master teachers who then go on to use the Copied Program and the Copied Materials for their own teacher training programs, and so on, as each new level of master teachers is certified.

10.    PSC brings this action to enforce its rights under the Copyright Act and to seek redress from Defendants for their breachers of their respective licensing agreements. PSC seeks damages under the Copyright Act, 17 U.S.C. §§ 502, 504, and 505, including actual losses and the infringers' profits, statutory damages, injunctive relief, compensatory and consequential damages, and attorneys' fees and costs under 17 U.S.C. § 505.

## **THE PARTIES**

11.    Plaintiff Pilates Sports Center International Inc. is an Arizona corporation organized and existing under the laws of the State of Arizona, with its

principal place of business in Peoria, Arizona, and a Pilates training studio in Encino, California.

12.    Plaintiff's predecessor-in-interest, Pilates Sports Center, Inc., was founded in 2000, and was a California corporation, with its principal place of business in Encino, California.

13.    Plaintiff's predecessor-in-interest operated out of California until the pandemic, when the corporation was reformed as Plaintiff and relocated to Arizona. All of Plaintiff's predecessor-in-interests rights, agreements and intellectual property were transferred to Plaintiff at that time. The Pilates training studio still operates out of Encino, California.

14.    Defendant Body Be Well, LLC is a limited liability company organized under the laws of the State of New York, with its principal place of business in Red Hook, New York.

15.    Defendant Chelsea Streifeneder is an individual who, upon information and belief, resides in Red Hook, New York.

16.    Defendant Suzanne Hazelton is an individual who, upon information and belief, resides in Coxsackie, New York.

## JURISDICTION AND VENUE

17.    PSC realleges and incorporates each of preceding paragraphs 1–16 as though fully set forth herein.

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the copyright laws of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because PSC and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

19.    This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are related to the federal

claims such that they form part of the same case or controversy.

20.    Each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the California Long Arm Statute, Cal. Code Civ. Proc § 410.10, due at least to each Defendant agreeing to jurisdiction in the "County of Los Angeles" in their respective licensing agreements, which were made and entered into in the State of California.

21.    Venue is proper in this judicial district pursuant to each Defendant's licensing agreement agreeing to the specific venue of courts located in the "County of Los Angeles" in their respective licensing agreements.

## PILATES AND PSC

22.    PSC realleges and incorporates each of preceding paragraphs 1–21, though fully set forth herein.

23.    Pilates is a full body exercise regimen developed by Mr. Joseph H. Pilates, an exercise trainer, in the early twentieth century. Pilates consists of repetitive exercise movements performed on either a mat or Pilates exercise equipment. Generally, the goal of performing Pilates exercises is to improve strength, endurance, balance, and flexibility.

24.    Pilates instructors typically follow one of two approaches to Pilates training and education: Classical, or Traditional, Pilates, or Progressive, or Contemporary, Pilates.

25.    Classical Pilates adheres closely to the methodology, including the original exercise routines, developed by Mr. Pilates. Instructors following Classical Pilates methods follow a similar sequential exercise routine in each class.

26.    Progressive Pilates deviates from Classical Pilates by incorporating new or reimagined Pilates exercises that take into consideration the exerciser's anatomy. Progressive Pilates utilizes additional equipment that would not be used in Classical Pilates exercises.

27. PSC was created more than twenty (20) years ago with the goal of updating the Classical approach to Pilates exercises and teachings to incorporate more therapeutic and rehabilitative influences.

28. PSC uniquely fused both Classical and Progressive Pilates methodologies, along with its own anatomy and rehabilitative protocols to create its programs and trainings, including the Programs.

29. As a direct result of its unique focus, PSC is nationally and internationally recognized for its programs and training, including the Programs, which include PSC's proprietary training systems, styles, methodologies, written materials, certifications and curricula.

30. PSC's unique programs and trainings, including the Programs, draw aspiring Pilates instructors from around the world to enroll and become PSC certified Master Trainers.

31. Students who enroll in the Programs are given access to the Materials, which outline PSC's nontraditional, PSC curated order and descriptions of Pilates, and PSC created, exercises.

32. Each exercise within the Materials is described PSC created descriptions, as well as a format and order of instruction developed by PSC. The format encourages students to think about the trainings and the exercises in a specific order for what PSC has found, through years of experience, to be a more effective teaching manner and method. Thus making PSC Master Teachers more effective instructors.

33. The PSC format is outlined in the Materials in the "How to Use the Manual" page and includes the following items:

*Set Up – what is the set up of the equipment*

*Muscular Focus – instruct client that this is what they are working on*

*Intention – why the exercise is being employed*

*Position Movement – how to perform the exercise*

*Monitor – the key elements to correct*

*Cueing – helpful ways to articulate movement & placement*

*Modifications – how to fix the exercise before abandoning it*

*Variations – increase the difficulty and change the pattern*

34.    The Materials use this PSC format throughout, so that its students learn and can teach the Pilates, and PSC created exercises, effectively.

35.    The Materials use the layout of listing the PSC format on the lefthand side of the page, with one or more descriptions or instructions next to it, often with a photograph depicting the description and/or instruction.

36.    In other sections of the Materials, PSC uses popular culture references to describe the Pilates exercises depicted on the page. The names given to the exercises deviate from the typical names given to similar exercises and are PSC's unique naming structure to help Master Teachers learn teaching the exercises using the PSC format in a fun and memorable way.

37.    For example, in the Reformer section of the Materials, PSC uses the term "Barbie," a reference to the popular doll, to describe certain arm exercises. These names include "Barbie Arms/Arm Flexion" and "Barbie Variation 1." The "Barbie Arms/Arm Flexion" movement requires the performer to keep the elbows slightly bent to the ribs without allowing the elbows to straighten or bend any further.

38.    PSC Certified Master Teachers use the Materials to teach the Programs to students allowing their student, should they complete the courses and pass the certification test, to become qualified Pilates teachers.

39.    Certain parts of the Programs and the Materials are confidential and are not to be disclosed, except to those people within a Master Teacher's business and/or studio, who need to know in order to assist the Master Teacher with the teacher training business utilizing the Programs and the Materials.

40.    PSC has registered copyrights in certain of the Materials. Copyright Registration No. TXu 2-414-423, for the following Materials: "Teacher Training Resource—Fundamentals Nuts & Bolts and Philosophy;" "Teacher Training Resource—Mat Work;" "Teacher Training Resource—Reformer Work; " "Teacher Training Resource—Cadillac Work;" and "Teacher Training Resource—Wunda Chair Work;" and Copyright Registration No. TXu 2-414-427, for the following Materials: "Teacher Training Resource—Fundamentals Nuts & Bolts and Philosophy;" "Teacher Training Resource—Mat Work; " "Teacher Training Resource—Reformer Work;" "Teacher Training Resource—Cadillac Work; " and "Teacher Training Resource—Wunda Chair Work."

41.    PSC Master Teachers must go through rigorous training and testing to become Certified PSC Master Teachers. Once certified, PSC Master Teachers are then provided, through licensing agreements, access to PSC's proprietary Materials, which include not just materials for teaching Pilates instructor classes, but also materials on how to run and operate the PSC model of conducting a Pilates teacher training businesses. The Materials provide for turn-key operations.

42.    PSC also maintains an online subscription channel where it provides further information and instruction, including various materials, including the Materials, videos, and classes. Each Certified PSC Master Teacher is provided with a unique discount code for a discounted subscription to PSC's channel. The code is not to be shared with anyone and is solely for use by that specific PSC Master Teacher.

## **DEFENDANTS**

43.    Defendant Streifeneder applied for the Master Teacher program and entered into a confidentiality agreement with PSC's predecessor-in-interest on or about July 14, 2010.  She then attended and graduated from the Master Teacher Program in or around 2004. On or about October 26, 20210, she and BBW entered int a licensing agreement with PSC's predecessor-in-interest to use the Materials and to

offer and teach PSC's programs, including the Programs, to clients through her own Pilates studio, Body Be Well (the "PSC Streifeneder Licensing Agreement").

44.    Defendant Hazelton graduated from the PSC Teacher Program offered and taught by Defendant Streifeneder in or around 2014. On or around May 20, 2018, Defendant Hazelton entered into a confidentiality agreement with PSC's predecessor-in-interest to begin the PSC Master Teacher Program process. On or about March 9, 2020, Defendant Hazelton graduated from the PSC Master Teacher Program and entered into a licensing agreement with PSC's predecessor-in-interest to use the Materials and teach PSC programs, including the Programs, solely at BBW's Pilates studio locations (the "PSC Hazelton Licensing Agreement").

45.    The PSC Streifeneder Licensing Agreement and the Hazelton Licensing Agreement are collectively referred to herein as the "Licensing Agreements."

46.    The Licensing Agreements provide Defendants with the ability to teach/train courses utilizing the Programs for Defendants' own students at Defendant's Pilates Studio.

47.    The Licensing Agreements were for an initial term of one year for Defendant Hazelton and just over fourteen (14) months for Defendants Streifeneder and BBW, and subsequently automatically renewed for additional one-year periods until terminated.

48.    The Licensing Agreements cover both the Programs and the Materials.

49.    In the Licensing Agreements, Defendants agreed that the Programs have distinct commercial value.

50.    PSC explicitly retains all rights not expressly granted to Defendants in their respective Licensing Agreements.

51.    The Licensing Agreements allow use of PSC's intellectual property only in the manner and to the extent specifically licensed.

52.    As set forth in the Licensing Agreements, all uses of PSC intellectual

property are required to be submitted to PSC for review and approval before use.

53.    The Licensing Agreements restrict Defendants' use of PSC's intellectual property to solely in connection with the offering, teaching and training of the Programs at Defendants' licensed Pilates studio.

54.    The Licensing Agreements prohibit Defendants from using the Programs or the Materials, or any other PSC intellectual property, or any portions thereof, for any purpose not expressly authorized by the Licensing Agreements without PSC's prior written consent.

55.    The Licensing Agreements further prohibit Defendants from changing or modifying the Programs or the Materials without PSC's prior written consent.

56.    The Licensing Agreements also prohibit Defendants from reproducing or using the Materials for any purpose other than that which is necessary to offer and teach the Programs without PSC's prior written consent.

57.    The Licensing Agreements also contain a confidentiality clause, in which Defendants recognize that the information and knowledge received with respect to the Programs and the Materials, including the methodologies and business procedures and any trade secrets revealed to Defendants under the Licensing Agreements, are to remain confidential and will not be disclosed to anyone other than those employees of Defendants that need to know such information in order to utilize the Programs.

58.    The Hazelton Licensing Agreement further restricted Defendant Hazelton from offering a teacher training program to Defendants' students or the general public while the Hazelton Licensing Agreement was in effect.

59.    Both Licensing Agreements have dispute resolution clauses that require the parties to attempt to resolve any dispute for a set period of time (30 days for Defendant Hazelton and 60 days for Defendants Streifeneder and BBW) before the parties are required to consent to non-binding mediation in Los Angeles, California.

60.    The Hazelton Licensing Agreement further provides that if the parties

are unable to resolve their dispute through the mediation and litigation commences, the prevailing party will be entitled reasonable attorneys' fees not to exceed $10,000 and costs. However, if either party fails to either demand mediation prior to commencing a litigation, or fails to respond to a demand for mediation, and that party prevails at trial, they are not entitled to an award of attorneys' fees due to that party's failure to, in good faith, participate in mediation.

61.    The Licensing Agreements are construed under and in accordance with California law, and all disputes are to be brought in the County of Los Angeles.

62.    The Licensing Agreements further provide that any breach will result in irreparable harm to PSC, which harm cannot be adequately compensated by an award of money damages, and thus Defendants agreed that if there is any such breach, PSC is entitled to injunctive relief.

## **DEFENDANTS' COPYING**

63.    PSC IP realleges and incorporates each of preceding paragraphs 1–62, though fully set forth herein.

64.    In or around mid-September of 2023, PSC became aware that Defendants were promoting a teacher training program that was not the Programs – the Copied Program. At the time, both Defendants' Licensing Agreements were still in force.

65.    PSC was provided with the manuals for the Copied Program – the Copied Materials.

66.    The entire presentation, format and structure of the Materials and the Copied Materials appear the same.

67.    The names of the specific sections and chapters, the layouts and structures of each page and every chapter, the format for teaching, and the language used in the Copied Materials is either strikingly similar or exactly the same as used in the Materials.

68.    For example, in the Fundamentals Program section of the Materials, PSC

outlines a head and neck alignment protocol. In this outline, PSC uses the headings "Intention," "Position," "Monitor," "Cueing," "Modifications," and "Remedial exercises to practice and find placement." Each section is listed on the lefthand side of the page with one or more descriptions or instructions, all created by PSC. For example, under the heading "Cueing," the instructions are as follows:

*Draw chin back while pulling up thru crown*

*Open eyes in back of head*

*Wearing a pointy hat, the hat points up and slightly forward*

*Pull neck out of shoulders like a turtle, keeping neck long*

*Tuck chin as if holding a peach under chin*

*String at back of skull is pulling you up*

69.    Similarly, in the Copied Materials, "Head and Neck" section, Defendants also outline a head and neck alignment protocol. The headings are almost exact copies of the Materials: "Neutral Position," "Monitor," "Standard Cues," "Common Modifications," and "Remedial Exercises." As in the Materials, each section is followed by a list on the lefthand side of the page with one or more descriptions or instructions, all strikingly similar to those used in the Materials. For example, under "Standard Cues," the instructions are as follows:

*Draw the chin back while pulling up through the top of the head*

*Open eyes in the back of the head*

*Think of a pointy party hat*

*Pull neck out of the shoulders*

*Tuck chin as if holding a lemon*

*String on the top of the head and pull straight up*

70.    In another example of almost direct copying, Defendants utilize "Barbie" related names for the same exercises and instructions in the section of the Copied Materials that mirrors the same section of the Materials. Such names are not commonly used in the Pilates industry and Defendants had no reason to use them, other than, upon information and belief, due to the ease of copying the Materials.

71.    Defendants, pursuant to their respective Licensing Agreements, were provided with proprietary PSC images which were action shots of PSC teachers providing the Programs. The Licensing Agreements restricted the use of such PSC images to the Programs and not any other program of class offered or taught by the Defendants.

72.    Upon information and belief, knowing this, Defendants re-created the PSC images, by shooting virtually identical photographs of their own models for use in the Copied Materials and for the Copied Programs.

73.    However, the Licensing Agreements also expressly prohibited Defendants from videotaping and/or photographing the methodology and/or any part of the Programs without PSC's prior written consent.

74.    Upon information and belief, Defendants photographed the methodology and the Programs, in direct violation of their respective Licensing Agreements.

75.    In the Copied Materials, Resources page, it tells Defendants' students to go to PSC's subscription channel for additional information and to ask Defendant Hazelton for the discount code to access PSC's subscription channel.  The discount code PSC provided to Defendants was solely for their own respective use, not for them to offer to their own students during the Copied Programs or in the Copied Materials.

76.    Defendants, upon information and belief, used the Materials as the basis for the Copied Materials, and the Programs as the basis for the Copied Program, because it was far easier to copy and modify the Materials and the Programs rather

than spend the time, money and resources necessary to create their own unique materials and programs.

77.    Defendants have, upon information and belief, now offered at least four, if not more, teacher trainings of the Copied Program. In doing so, Defendants made copies of, distributed and utilized the Copied Materials. Defendants further then certified their own students as Master Teachers of the Copied Program.

78.    Upon information and belief, Defendants currently charge approximately $6,200 per student for their Copied Programs.

79.    Defendants continue to offer the Copied Program utilizing the Copied Materials, and continue to teach and certify their own students as Master Teachers of the Copied Program.

80.    Upon information and belief, Defendants' certified Master Teachers are now also offering and teaching the Copied Program and copying, distributing and utilizing the Copied Materials with their own students.

## DISPUTE AND FAILURE TO AGREE TO MEDIATION

81.    On March 6, 2024, PSC notified Defendants of their unauthorized copying, modifying and use of the Programs and the Materials. PSC continued to attempt to resolve the disputed with Defendants. However, such attempts have been unsuccessful.

82.    PSC then requested that the parties enter into mediation in Los Angeles, California, pursuant to the Licensing Agreements, including asking multiple times for Defendants to review proposed mediators and propose mediation dates. Defendants refused to do so.

83.    Defendants' breaches and unauthorized copying, modifying and uses were not and have not been cured. Accordingly, as permitted in the Licensing Agreements, PSC provided notices of termination to each of the Defendants on December 10, 2024, pursuant to the Licensing Agreements, via Certified, Return

Receipt US Mail.

84.    The breaches and infringements set forth herein above are only examples. Because Defendants had full access to the Materials, it is very likely Defendants copied and/or modified other portions of the Materials, not just those stated herein, of which PSC remains unaware.

## COUNT ONE

## BREACH OF CONTRACT

### (Against Defendants Streifeneder and BBW)

85.    PSC realleges and incorporates each of preceding paragraphs 1–84, though fully set forth herein.

86.    Defendants Streifeneder and BBW entered into the PSC BBW Licensing Agreement which is a valid contract.

87.    PSC has performed all of its obligations under the PSC BBW Licensing Agreement in all material respects.

88.    Defendants Streifeneder and BBW breached the PSC Streifeneder Licensing Agreement by changing or modifying the Programs without PSC's prior written consent.

89.    Defendants Streifeneder and BBW breached the PSC Streifeneder Licensing Agreement by changing or modifying the Materials without PSC's prior written consent.

90.    Defendants Streifeneder and BBW further breached the PSC Streifeneder Licensing Agreement by changing, modifying, adding to and/or deleting from the Materials, including parts thereof, to create the Copied Materials without the express prior written consent of PSC.

91.    Defendants Streifeneder and BBW further breached the PSC Streifeneder Licensing Agreement by changing, modifying, adding to and/or deleting parts of the Programs, to create the Copied Program without the express prior written consent of

1  PSC.

2      92.    Defendants Streifeneder and BBW further breached the PSC Streifeneder

3  Licensing Agreement by using PSC's intellectual property rights in connection with

4  offering, teaching, and utilizing the Copied Programs which are in direct competition

5  with the Programs.

6      93.    Defendants Streifeneder and BBW further breached the PSC Streifeneder

7  Licensing Agreement by, upon information and belief, photographing the

8  methodology and the Programs without PSC's prior written consent.

9      94.    Defendants Streifeneder and BBW further breached the PSC Streifeneder

10 Licensing Agreement by disclosing PSC's confidential information to students of the

11 Copied Program.

12     95.    Defendants Streifeneder and BBW further breached the PSC Streifeneder

13 Licensing Agreement by refusing to consent to mediation as required by the PSC

14 Streifeneder Licensing Agreement.

15     96.    The breaches set forth above are only examples, as, upon information and

16 belief, because Defendants Streifeneder and BBW had full access to all of the

17 Materials, it is very likely that Defendants Streifeneder and BBW are also using and/or

18 have modified or copied other portions of the Materials besides the manuals, including

19 the exams, quizzes, lesson plans, student contracts, and every other document that is

20 provided by PSC to Master Teachers to offer and conduct the Programs.

21     97.    The breaches by Defendants Streifeneder and BBW have directly and

22 proximately caused PSC substantial damage.

23     98.    For example, upon information and belief, PSC has not been properly

24 compensated for distributions of each of the manuals for the Copied Program, nor the

25 license fees required for the teaching of the Copied Program.

26     99.    PSC seeks recovery of all compensatory damages caused by any of

27 Defendants Streifeneder's and BBW's breaches.

28

## COUNT TWO

## BREACH OF CONTRACT

**(Against Defendant Hazelton)**

100.  PSC realleges and incorporates each of preceding paragraphs 1–99, though fully set forth herein.

101.  Defendant Hazelton entered into the PSC Hazelton Licensing Agreement which is a valid contract.

102.  PSC has performed all of its obligations under the PSC Hazelton Licensing Agreement in all material respects.

103.  Defendants Hazelton breached the PSC Hazelton Licensing Agreement by changing or modifying the Programs without PSC's prior written consent.

104.  Defendant Hazelton breached the PSC Hazelton Licensing Agreement by changing or modifying the Materials without PSC's prior written consent.

105.  Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by changing, modifying, adding to and/or deleting from the Materials, including parts thereof, to create the Copied Materials without the express prior written consent of PSC.

106.  Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by changing, modifying, adding to and/or deleting parts of the Programs, to create the Copied Program without the express prior written consent of PSC.

107.  Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by using PSC's intellectual property rights in connection with offering, teaching, and utilizing the Copied Programs which are in direct competition with the Programs.

108.  Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by, upon information and belief, photographing the methodology and the Programs without PSC's prior written consent.

109. Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by disclosing PSC's confidential information to students of the Copied Program.

110. Defendant Hazelton breached the Hazelton Licensing Agreement by offering the Copied Program to Defendants' students and to the general public, which is in direct competition with the Programs.

111. Defendant Hazelton further breached the PSC Hazelton Licensing Agreement by refusing to consent to mediation as required by the PSC Hazelton Licensing Agreement.

112. The breaches set forth above are only examples, as, upon information and belief, because Defendant Hazelton had full access to all of the Materials, it is very likely that Defendant Hazelton is also using and/or has modified or copied other portions of the Materials besides the manuals, including the exams, quizzes, lesson plans, student contracts, and every other document that is provided by PSC to Master Teachers to offer and conduct the Programs.

113. The breaches by Defendant Hazelton have directly and proximately caused PSC substantial damage.

114. For example, upon information and belief, PSC has not been properly compensated for distributions of each of the manuals for the Copied Program, nor the license fees required for the teaching of the Copied Program.

115. PSC seeks recovery of all compensatory damages caused by any of Defendant Hazelton's breaches.

116. PSC further seeks an injunction prohibiting Defendant Hazelton from offering or teaching the Copied Program and from using, copying or distributing the Copied Materials.

/ / /

/ / /

## COUNT THREE

## COPYRIGHT INFRINGEMENT

## (Against all Defendants)

117.   PSC realleges and incorporates each of preceding paragraphs 1–116, though fully set forth herein.

118.   PSC owns copyright registrations in certain of the Materials as set forth in Exhibit A.

119.   Defendants have infringed PSC's copyrights in such Materials in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, by creating, reproducing and disseminating the Copied Materials and teaching the Copied Program.

120.   Upon information and belief, Defendants sublicensed the right to reproduce and distribute the Copied Materials and sublicensed the right to teach the Copied Program to their own students.

121.   Defendants own and their students' acts are prohibited by and beyond the scope of the terms and licenses permitted under the Licensing Agreements. Such exceeding of the Licensing Agreements' terms also constitutes copyright infringement.

122.   At no time did PSC authorize Defendants to copy the Programs, or make derivatives works such as the Copied Program.

123.   At no time did PSC authorize Defendants to copy the Materials or make derivative works of the Materials.

124.   Defendants knew that PSC owned the copyrighted Materials.

125.   Defendants' acts of infringement are willful, intentional, continuous, and purposeful, in direct disregard of and with indifference to PSC's rights.

126.   Each violation of PSC's rights in and to each copyrighted Material constitutes a separate and distinct act of copyright infringement by Defendants.

127.   As a direct and proximate result of Defendants' infringement, PSC is entitled to a damage award in an amount to be proven at trial.

128.   PSC is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504 and otherwise according to law.

129.   PSC is entitled to permanent injunctive relief and redress for Defendants' willful, intentional, continuous, and purposeful use and exploitation of PSC's copyrighted Materials for Defendants' own financial benefit with the full knowledge that the Copied Materials and the Copied Program infringes on, and was in complete disregard of, PSC's rights. Defendants' conduct is causing and, unless enjoined, will continue to cause, substantial and irreparable harm to PSC.

## COUNT FOUR

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (Against All Defendants)

130.   PSC realleges and incorporates each of preceding paragraphs 1–129, though fully set forth herein.

131.   Defendants' students are, upon information and belief, reproducing and disseminating the Copied Materials and teaching the Copied Program.

132.   Defendants are liable as contributory infringers for the copyright infringements committed by their students.

133.   Defendants had full knowledge that the infringement by their students has occurred and is continuing to occur, and Defendants caused, enabled, facilitated, and materially contributed to such infringement.

134.   Defendants' students have directly infringed and are directly infringing PSC's copyrights by reproducing and disseminating the Copied Materials and teaching the Copied Program.

135.   PSC caused, enabled, facilitated, and materially contributed to Defendants' students' infringement by, upon information and belief, providing the

Copied Materials to their students and by purporting to issue licenses to the Copied Materials to Defendants' students and by giving access to Defendants' students to the Materials and/or the Copied Materials.

136. Defendants' knowledge is actual and constructive, as Defendants are knowingly teaching and certifying their students using the Copied Materials and Copied Program, all while knowing that the Copied Materials and Copied Program were unauthorized copies and derivative works of the Materials and the Program and that the Licensing Agreements explicitly prohibited such conduct.

137. Defendants' contributory infringement is and has been willful, intentional, continuous, and purposeful, in direct disregard of and with indifference to PSC's rights.

138. Defendants' contributory infringement has caused substantial damage to PSC.

139. Each violation of PSC's rights in and to each copyrighted Material constitutes a separate and distinct act of copyright infringement by Defendants.

140. As a direct and proximate result of Defendants' contributory infringement, PSC is entitled to a damage award in an amount to be proven at trial.

## COUNT FIVE

## VICARIOUS COPYRIGHT INFRINGEMENT

### (Against All Defendants)

141. PSC realleges and incorporates each of preceding paragraphs 1–140, though fully set forth herein.

142. Defendants are liable as vicarious infringers for the copyright infringement committed by Defendants' students' students.

143. Upon information and belief, Defendants have profited and are continuing to profit from the direct infringement by Defendants' students' students and have not exercised any rights to stop or limit such infringement.

144.   Defendants' students' students have directly infringed and are directly infringing PSC's copyrights by reproducing and disseminating the Copied Materials and teaching the Copied Program.

145.   Defendants had and have the ability to prevent such infringing conduct by refusing to license the Copied Materials and the Copied Program.

146.   Defendants instead, upon information and belief, are actively seeking to licensed the Copied Materials and Copied Program to Defendants' students' students.

147.   Defendants are profiting from the direct infringement of Defendants' students' students by, for example, receiving licensing fees and reproduction fees from such students.

148.   Defendants' vicarious infringement is and has been willful, intentional, continuous, and purposeful, in direct disregard of and with indifference to PSC's rights.

149.   Defendants' vicarious infringement has caused substantial damage to PSC.

150.   Each violation of PSC's rights in and to each copyrighted Material constitutes a separate and distinct act of copyright infringement by Defendants.

151.   As a direct and proximate result of Defendants' vicarious infringement, PSC is entitled to a damage award in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, PSC respectfully requests that the Court enter judgment in its favor on all causes of action set forth herein and respectfully requests the following relief:

A.   Entry of judgment that each of the Defendants breached their respective Licensing Agreements and the implied covenant of good faith and fair dealing contained therein;

B.   Entry of judgment that each of the Defendants directly infringed PSC's

copyrights in violation of the Copyright Act;

C.    Entry of judgement that each of the Defendants contributorily and vicariously infringed PSC's copyright in violation of the Copyright Act;

D.    Compensatory and consequential damages, including, but not limited to, lost profits, goodwill and reputational harm, and lost licensing fees, resulting from Defendants' breach of their respective Licensing Agreements in an amount to be proven at trial;

E.    An award to PSC of Defendants' profits attributable to their direct, contributory, and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, all fees they collected from third parties to attend the Copied Program and use the Copied Materials as well as the licensing fees Defendants collected from their students' uses of the Copied Program and the Copied Materials in violation of PSC's copyrights and all other profits Defendants stand to gain from their infringement;

F.    An award to PSC of monetary damages equal to PSC's actual damages caused by Defendants direct, contributory, and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, lost profits from receiving less (or no) licensing and reproduction fees from Defendants and their students, lost profits due to the loss of students for PSC's Programs, loss of goodwill and reputational harm;

G.    In the alternative, an award to PSC of statutory damages pursuant to 17 U.S.C. § 504(c) in the increased amount of $150,000 per infringement due to Defendants' willful infringements;

H.    An order permanently enjoining Defendants from infringing PSC's copyrights, whether directly, contributorily, or vicariously, and directing Defendants to cease causing, enabling, facilitating, encouraging, promoting, inducing, participating in, and contributing to the infringement of PSC's copyrights;

I.    PSC's costs and disbursements in this action, including reasonable attorneys' fees under 17 U.S.C. § 505 and pre-judgment and post-judgment interest; and

J.    Such other further or additional relief the Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Fed. R. Civ. P. 38(b) and L.R. 38-1, PSC demands a jury trial on all issues so triable.

Dated:  December 11, 2024              Respectfully submitted,

                 /s/ Jenna F. Karadbil

                 Jenna F. Karadbil (SBN 213574)
                 jenna@jfk-lawyer.com
                 **LAW OFFICE OF JENNA F. KARADBIL, P.C.**
                 375 Greenwich Street, Suite 812
                 New York, NY 10013
                 Tel: 646-527-7323
                 Fax: 866-289-5775

                 RYAN E. HATCH (CA Bar No. 235577)
                 **HATCH LAW, P.C.**
                 13323 Washington Blvd, Suite 302
                 Los Angeles, CA 90066
                 Telephone: (310) 279-5076
                 Facsimile: (310) 693-5328
                 ryan@hatchlaw.com

                 *Attorneys for Plaintiff* PILATES SPORTS CENTER INTERNATIONAL INC.